Raffi Kassabian (SBN 260358)
Email: raffi@bezdikkassab.com
Sareen Bezdikian (SBN 229165)
Email: sareen@bezdikkassab.com
Arin Pezeshkian (SBN 347127)
Email: arin@bezdikkassab.com
**BEZDIK KASSAB LAW GROUP**
301 N. Lake Ave., Suite 600
Pasadena, CA 91101
Telephone: (626) 499-6998

Gretchen M. Nelson (SBN 112566)
Email: gnelson@nflaw.firm.com
Gabriel S. Barenfeld (SBN 224146)
Email: gbarenfeld@nfllawfirm.com
**NELSON & FRAENKEL LLP**
601 So. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Tel: (844) 622-6469

Attorneys for Plaintiffs and the Proposed Class

BEZDIK KASSAB LAW GROUP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA HAKOPYAN, ARAM SARGSYAN, and ANNA ABRAHAMYAN, on behalf of themselves and others similarly situated, | Case No.: |
| | **CLASS ACTION** |
| | **COMPLAINT FOR:** |
| Plaintiffs, | 1) **Violation of the Equal Credit Opportunity Act (15 U.S.C. § 1691 *Et Seq.*)** |
| vs. | 2) **VIOLATION OF PLAINTIFFS' EQUAL RIGHTS (42 U.S.C. § 1981)** |
| CITIBANK, N.A.; and DOES 1-10, inclusive, | 3) **DISCRIMINATION UNDER THE UNRUH CIVIL RIGHTS ACT (CAL. CIVIL CODE §§ 51, 52(A))** |
| Defendants. | 4) **Violations Under the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, Et Seq.)** |
| | **(Jury Tral Demanded)** |

Plaintiffs Anna Hakopyan ("Hakopyan"), Aram Sargsyan ("Sargsyan"), and Anna Abrahamyan ("Abrahamyan") (collectively, "Plaintiffs") individually and on behalf of all others similarly situated, hereby file this Complaint against Defendant Citibank, N.A. ("Defendant" or "Citi"), on personal knowledge as to themselves and their own acts, and as to all other matters, on information and belief.

## INTRODUCTION

1.     As set forth below, this Court has jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question) and 1332(d) (CAFA).

2.     Plaintiffs bring this class action lawsuit on behalf of themselves and others who have been impacted by Defendant's discriminatory practices against people of Armenian descent (sometimes referred to herein as "Armenians") between 2015 and 2021 ("relevant time period").

3.     Defendant discriminated against those who had last names ending in -ian or -yan (typical for individuals of Armenian descent) and lived in or near Glendale, California, which has a large Armenian community, and other surrounding areas within Los Angeles County.

4.     Defendant's practices impacted Armenians who held credit cards that were later closed, Armenians who applied for credit cards and were arbitrarily denied, and Armenians who had bank accounts that were closed without valid reasons. Plaintiffs and the Class have suffered damages or lost money or property as a result of these discriminatory practices.

## THE PARTIES

5.     Currently and during the relevant time period, Plaintiff Anna Hakopyan resided in North Hollywood, California and is of Armenian descent.

6.     Currently and during the relevant time period, Plaintiff Aram Sargsyan resided in Glendale, California and is of Armenian descent.

7.     Currently and during the relevant time period, Plaintiff Anna Abrahamyan resided in Granada Hills, California and is of Armenian descent.

BEZDIK KASSAB LAW GROUP

8.     Defendant Citi is now and at all relevant times was a national bank with its principal place of business purportedly in New York, New York. Defendant Citi has several branches throughout the United States, including California.

9.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants named herein under the fictitious name of DOES 1 through 10, inclusive, and their specific roles and improper actions if any, are unknown to Plaintiffs, who, therefore sue defendants by such fictitious names. Plaintiffs will ask leave of Court to amend this complaint and insert the true names and capacities of said defendants and pertinent additional facts when the same have been ascertained.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs assert federal causes of action. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act because (1) the amount in controversy exceeds $5,000,000; (2) Plaintiffs are citizens of the State of California and Defendant is a national bank; and (3) the number of class members exceeds 100. See 28 U.S.C. § 1332(d).

11.     This Court has personal jurisdiction over Defendant because Citi transacts business in the State of California, including the County of Los Angeles. In addition, Plaintiffs' claims arise out of Defendants' conduct within this District.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### A.     The Consent Order Found Regular Discrimination by Defendant

13.     On information and belief, Defendant has regularly discriminated against those of Armenian descent. On November 8, 2023, the Consumer Financial Protection Bureau (the "CFPB" or "Bureau"), issued a consent order (the "Consent Order") detailing Defendant's discrimination against those of Armenian descent since at least 2015 through 2021.

BEZDIK KASSAB LAW GROUP

14.    The Consent Order stated the following violations by Citi:

1) [Citi] engaged in a pattern or practice of discrimination against certain applicants based on Armenian national origin in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(a), and Regulation B, 12 C.F.R. §§ 1002.4(a), 1002.6(b)(1), (9); 2) [Citi] failed to provide applicants with an accurate and adequate statement of the specific reasons for the adverse action when the applicant was denied based on Armenian national origin in violation of ECOA, 15 U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9(a)-(b); and 3) [Citi] violated the Consumer Financial Protection Act of 2010 (CFPA) by violating ECOA, 12 U.S.C. §§ 5481(12)(D), (14), 5536(a)(1)(A), 15 U.S.C. § 1691c(b). Under §§ 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order (Consent Order).

15.    Specifically, the Consent Order states that Defendant's discriminatory practices included the following:

2. **[Citi] employees used the applicant's last name ending in -ian or -yan, especially if the applicant's address was in or around Glendale, California**, to identify for discriminatory treatment applicants they associated with Armenian national origin.

3. [Citi] employees suspected that applicants with last names ending in -ian or -yan, especially if the applicant's address was in or around Glendale, California, were more likely to commit fraud and referred to them as "bust outs" because the employees perceived them as likely to incur significant charges and then "bust out," meaning they would leave the country or otherwise not pay off the charges. **Some [Citi] employees referred to these applicants as "Armenian bad guys" or the "Southern California Armenian Mafia."**

BEZDIK KASSAB LAW GROUP

4. As a result of [Citi]'s pattern or practice of discrimination, [Citi] more frequently denied credit to applicants based on Armenian national origin, as compared to other similarly situated applicants. [Citi]'s pattern or practice of discrimination is not explained by a legitimate, non-discriminatory reason.

5. **This pattern or practice of discrimination affected credit card applicants, including those seeking a new credit card or a credit line increase on an existing credit card**, who were subject to manual underwriting by [Citi]'s Citi Retail Services unit.

(Emphasis added.)

16.    The Consent Order found that Defendant's discriminatory practices violated the Equal Credit Opportunity Act (the "ECOA"), concluding, in part:

[Citi]'s pattern or practice described in this Section discriminated against Citi Retail Services Credit Card applicants in multiple aspects of the Credit Transaction on the basis of national origin in violation of ECOA, 15 U.S.C. § 1691(a)(1), and Regulation B, 12 C.F.R. §§ 1002.4(a), 1002.6.

17.    The Consent Order also concluded that Defendant's failure to provide accurate and adequate adverse action notice was in violation of the ECOA, stating, in part:

When [Citi] denied a Citi Retail Services Credit Card Application based on the applicant's Armenian national origin, [**Citi] failed to inform the applicant accurately and adequately of the reason for the action** in the adverse action notice as required by 15 U.S.C. § 1691(d) and 12 C.F.R. § 1002.9(a)-(b).

*      *      *

[Citi] therefore failed to provide a legally compliant statement of the specific reasons for the adverse action that [Citi] took against Citi Retail Services Credit Card applicants who it denied based on their Armenian

national origin, in violation of ECOA, 15 U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9(a)-(b).

(Emphasis added.)

18.     The Consent Order also had monetary provisions due to Defendant's violations, including (among other things), requiring Citi to pay a civil penalty of $24,500,000 to the Bureau.

### B.    Plaintiffs Were Victims of Defendant's Discrimination

19.     Plaintiff Hakopyan was a victim of Defendant's discrimination. Hakopyan is of Armenian descent. During the relevant period, she was a resident of North Hollywood, California, which is "in or around" Glendale, California. During the relevant period, Plaintiff Hakopyan had a Macy's and Best Buy branded Citi card which, despite her being in good standing, were abruptly closed.

20.     Hakopyan also had several other accounts, including a merchant account, business account and personal account with Citi during the relevant time period, which was also abruptly closed because Citi claimed that she is a high-risk client and that her business account had too many cash deposits.

21.     During the relevant time period, Hakopyan also applied for a Citi credit card, but later received a notification that her application had been denied.  When she requested an explanation from Citi as to why she was denied, she was informed that the request came from corporate and the Citi representative could not explain why she was denied.  Another agent eventually claimed that she was supposedly denied because of excessive cash deposits into her business account and that, as a result, she was considered a high-risk customer.

22.     On information and belief, during the relevant time period, Plaintiff Hakopyan's credit was in good standing. On information and belief, Citi took the foregoing adverse actions against Hakopyan because of her Armenian origin. As a result of Citi's discriminatory practices, Plaintiff Hakopyan has suffered damages or lost money or property.

BEZDIK KASSAB LAW GROUP

23.      Plaintiff Sargsyan was also a victim of Defendant's discrimination. Sargsyan is of Armenian descent. During the relevant time period, Sargsyan was a resident of Glendale, CA.  During the relevant time period, and approximatively in 2018 and 2020, Plaintiff Sargsyan applied for and was denied twice for a credit card by Citi despite his good standing. On information and belief, Sargsyan was denied because of his Armenian origin.

24.      On information and belief, Citi took the foregoing adverse actions against Sargsyan because of her Armenian origin. As a result of Citi's discriminatory practices, Plaintiff Hakopyan has suffered damages or lost money or property.

25.      Plaintiff Abrahamyan was also a victim of Defendant's discrimination. During the relevant time period, Abrahamyan resided in Granada Hills, California which is "in or around" Glendale, CA.  Abrahamyan is of Armenian descent.  In 2015, Abrahamyan applied for a Citi credit card at Citi's Granada Hills, CA branch and was approved for a credit card, only to then be immediately denied a few minutes later without being given any explanation why.  When Abrahamyan requested an explanation, she was not given one and was rudely forced out of the branch.

26.      On information and belief, during the relevant time period, Plaintiff Abrahamyan's credit was in good standing. On information and belief, Citi took the foregoing adverse actions against Abrahamyan because of her Armenian origin. As a result of Citi's discriminatory practices, Abrahamyan has suffered damages or lost money or property.

## CLASS ACTION ALLEGATIONS

27.      Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situation. The proposed class (the "Class") is defined as follows:

> All persons residing in Los Angeles County, California, whose last names end in -ian or -yan, who, between 2015 and 2021, applied for a credit card through Citi and were denied, who held Citi-branded cards that were closed, and/or who had bank accounts that were closed.

BEZDIK KASSAB LAW GROUP

28.     Plaintiffs reserve the right to revisit the Class definition based upon additional information that is learned through discovery.

29.     Excluded from the Class is (a) the Defendant; (b) those who were officers or directors of the Defendant at all relevant times, as well as members of their immediate families and their legal representatives, heirs, successors or assigns; (c) any entity in which Defendant has or had a controlling interest; (d) the Court and the Court's immediate family, and the Court staff; and (e) any person who timely and properly excludes himself or herself from the Class.

30.     The Class is so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). Although Plaintiffs do not yet know the exact size of the Class, thousands of individuals were likely impacted by the discriminatory practices.

31.     The Class is ascertainable because the Class members can be identified by using objective criteria.

32.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues. Fed. R. Civ. P. 23(a)(2). These questions include, but are not limited to:

    a.  Whether Defendant had discriminatory policies;

    b.  Whether Defendant engaged in discriminatory acts;

    c.  Defendant's violation of the ECOA;

    d.  Whether Defendant violated the Equal Rights under 42 U.S.C. §1981;

    e.  Whether Defendant violated the California Unruh Civil Rights Act;

    f.  Whether Defendant violated the California Unfair Competition Law;

    g.  Whether Plaintiff and the Class Members were harmed by Defendant's unlawful, discriminatory practices; and

    h.  Whether, as a result of Defendant's violation of the law as alleged herein, Plaintiffs and Class Members are entitled to monetary relief and, if so, the amount and nature of such relief.

BEZDIK KASSAB LAW GROUP

33.    Plaintiffs' claims are typical of the Class members because they are related to the same discriminatory practices, and there are no defenses available to Defendant uniquely related to Plaintiff. Fed. R. Civ. P. 23(a)(3).

34.    Plaintiffs are members of the Class they seek to represent. Plaintiffs are an adequate Class representative because their interests do not conflict with the interests of the Class members. Plaintiffs have retained counsel competent and experienced in complex litigation, including class actions, and they intend to prosecute this action vigorously on behalf of the Class. Plaintiffs will fairly and adequately protect the proposed Class members' rights. Fed. R. Civ. P. 23(a)(4).

35.    A class action is a superior means to ensure the fair and efficient adjudication of this case. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation, so that making the Class whole in the absence of a class action is unlikely and impracticable.

36.    Class members have relatively less interest in individually controlling the prosecution of separate actions and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action.

37.    The judicial system has no interest in burdening a number of courts when the claims of this highly cohesive Class can be fairly and efficiently concentrated and managed by this Court. Finally, individual actions would increase the delay and expense to all parties involved and to the courts. By proceeding as a Class action, the claims at issue can be managed efficiently through economies of scale.

38.    Further, without class certification, the prosecution of separate actions by individuals would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Citi, as it has acted or refused to act on grounds generally applicable to the Class and, as such, corresponding declaratory or injunctive relief with regard to the members of the Class as a whole is appropriate.

# FIRST CAUSE OF ACTION

## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

### 15 U.S.C. §1691 *ET SEQ.*

39.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 38 as though fully set forth in this claim and further allege against Defendant and DOES 1 through 10 as follows.

40.     The Equal Credit Opportunity Act (the "ECOA") makes it "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction... on the basis of race, color, religion, national origin, sex or marital status, or age."15 U.S.C. §1691a.

41.     The ECOA defines an "applicant" as one "who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. §1691a (b).

42.     Plaintiffs and the Class members meet this definition because Plaintiffs applied for credit cards, or asked for credit line extensions, and were denied and/or had their credit cards closed by Citi during the relevant time period.

43.      Defendant is a "creditor" as defined by the ECOA because Defendant regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e).

44.     An "adverse action" as defined by the ECOA is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C § 1691(d)(6).

45.     Defendant's actions of denying Plaintiffs' and the Class members' credit card applications or credit line increases and/or closing their credit cards constitute adverse action ("Adverse Credit Actions").

46.    As detailed above, Defendant has intentionally, knowingly, and purposefully implemented discriminatory practices to take Adverse Credit Actions against Armenians and those suspected of being of Armenian descent.

47.    The ECOA also requires creditors to notify and explain any adverse decision within 30 days. 15 U.S.C § 1691(d).

48.    Defendant's notification to Plaintiffs and other members of the Class was inaccurate and failed to identify the true reason for the Adverse Credit Actions. For example, when Plaintiff Hakopyan inquired, she was told she was a high-risk customer and that the Citi did not want a relationship with her.

49.    According to the CFPB Consent Order, Defendant provided false and inaccurate reasons for the Adverse Credit Actions, such that the notices were defective.

50.    For these reasons, Plaintiffs are entitled to relief under the ECOA.

51.    Plaintiffs seek actual damages and punitive damages under 15 U.S.C. § 169le(a)-(b). Plaintiffs are also seeking equitable and declaratory relief requiring Citi to refrain from continuing or implementing any discriminatory policies or practices against the Armenian community, as well as reasonable attorney's fees. 15 U.S.C. § 169le(c)-(d).

## SECOND CAUSE OF ACTION

### VIOLATION OF PLAINTIFF'S EQUAL RIGHTS

### 42 U.S.C. §1981

52.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 38 as though fully set forth in this claim and further allege against Defendant and DOES 1 through 10 as follows.

53.    Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,

and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981 (a).

54.     The "rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law. 42 U.S.C. § 1981(c).

55.     In addition, the right to "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (b).

56.     Asserting a claim under 42 U.S.C. § 1981 requires Plaintiff to show that "(1) he is a member of a protected class, (2) he attempted to contract for certain services, and (3) he was denied the right to contract for those services." *Nia v. Bank of America, N.A.*, 603 F. Supp. 3d 894 (S.D. Cal. 2022) (citing *Lindsey v. SLT Los Angeles*, LLC, 447 F.3d 1138, 1145 (9th Cir. 2006)).

57.     Here, Defendant discriminated against Plaintiffs and the Class by denying their applications for credit cards, credit line increases, and by closing their existing bank accounts.

58.     Defendant's discriminatory denial was intentional and based on Plaintiffs' national origin, race, and ancestral background. Plaintiffs were discriminated against in violation of 42 U.S.C. § 1981 and suffered damages as a result.

### THIRD CAUSE OF ACTION

### DISCRIMINATION UNDER THE UNRUH CIVIL RIGHTS ACT

### CAL. CIVIL CODE §§51,52(a)

59.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 38 as though fully set forth in this claim and further allege against Defendant and DOES 1 through 10 as follows.

60.     The Unruh Civil Rights Act states that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion,

ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51.

61.    Defendant is a "business establishment" that regularly conducts business in California.

62.    Defendant denied services on the basis of race, ancestry, and national origin. Defendant intentionally, knowingly, and purposefully discriminated against individuals of Armenian, or suspected, Armenian descent.

63.    Defendant is liable to Plaintiffs and the members of the Class for statutory damages pursuant to California Civil Code Section 52.

64.    Plaintiffs are also entitled to exemplary damages and attorney's fees, costs, and expenses arising from this action.

## FOURTH CAUSE OF ACTION

### VIOLATIONS UNDER THE UCL

### CAL. BUS. & PROF. CODE §§ 17200 *et seq.*

65.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 38 as though fully set forth in this claim and further allege against Defendant and DOES 1 through 10 as follows.

66.    The UCL states, in part, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

67.    Defendant's conduct was unlawful because it directly violated the ECOA, as discussed by the CFPBA Consent Order. Defendants' conduct was also unlawful in relation to the Civil Rights Act of 1866 and the California Unruh Civil Rights Act.

BEZDIK KASSAB LAW GROUP

BEZDIK KASSAB LAW GROUP

68.    Defendant's conduct was unfair because it arbitrarily denied Plaintiffs and the Class Members' applications despite applicants' good and/or excellent credit, solely because they were suspected of being of Armenian descent.

69.    Defendants' conduct was also fraudulent because Defendant provided false reasons for Plaintiffs and the Class Members' application rejections.

70.    Under the UCL, Plaintiffs and the Class Members seek to enjoin Defendant from continuing in the unfair, unlawful, and fraudulent discriminatory practices. Plaintiffs also seek restitution and reasonable attorney's fees, costs, and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A. Certification of the Class pursuant to Federal Rule of Civil Procedure 23.

B. Appointment of Plaintiffs and their counsel as adequate representatives;

C. Actual and compensatory damages, including consequential damages, in an amount to be proven at trial;

D. Punitive and exemplary damages in an amount to be proven at trial;

E. Restitution;

F. For injunctive and declaratory relief, as set forth herein;

G. Reasonable attorneys' fees and costs;

H. Statutory damages;

I. For an order awarding pre-judgment and post-judgment interest;

J. For such other and further relief as this Court find just, equitable and proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED:  November 22, 2023

**BEZDIK KASSAB LAW GROUP**
Raffi Kassabian
Sareen Bezdikian


By:  */s/ Raffi Kassabian*
Raffi Kassabian


*Attorneys for Plaintiff and the Proposed Class*


DATED:  November 22, 2023

**NELSON & FRAENKEL LLP**

Gretchen M. Nelson

Gabriel S. Barenfeld


By:  */s/ Gabriel S. Barenfeld*
Gabriel S. Barenfeld


*Attorneys for Plaintiffs and the Proposed Class*